**The court incorporates by reference in this paragraph and adopts as
the findings and orders of this court the document set forth below.
This document was signed electronically on July 02, 2009, which may
be different from its entry on the record.**

**IT IS SO ORDERED.**



_____
**Arthur I. Harris
United States Bankruptcy Judge**

**Dated: July 02, 2009**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 08-11498 |
| | ) | |
| John R. Moore, IV, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Huntington National Bank, | ) | Adversary Proceeding |
| | ) | No. 08-1163 |
| Plaintiff, | ) | |
| | ) | Judge Arthur I. Harris |
| v. | ) | |
| | ) | |
| John R. Moore, IV, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION [1]

On June 8, 2008, the plaintiff-creditor, Huntington National Bank

(Huntington), filed this adversary proceeding. Huntington seeks a determination

---

[1] This Memorandum of Opinion is not intended for official publication.

that certain debts, which were incurred by Marine Max, and guaranteed by the debtor-defendant, John Moore, IV, (Debtor) are nondischargeable under 11 U.S.C. § 523. This matter is currently before the Court on the Huntington's motion for summary judgment. For the reasons stated below, Huntington's motion for summary judgment is denied.

## JURISDICTION

This Court has jurisdiction over this action. A claim to determine the dischargeability of a debt under 11 U.S.C. § 523 is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and 28 U.S.C. § 1334, which falls within the jurisdiction granted to the Court pursuant to Local General Order Number 84, dated July 16, 1984.

## FACTUAL AND PROCEDURAL HISTORY

The Debtor filed a Chapter 7 bankruptcy petition on March 5, 2008. Huntington filed this adversary proceeding on June 6, 2008, and moved for summary judgment on May 11, 2009. The Debtor filed a response on May 29, 2009. Unless otherwise noted, the following facts are undisputed.

*1. Moore Marine Loans from Huntington*

Prior to the commencement of his bankruptcy case, the Debtor was the president of Moore Marine (Marine). On December 26, 2003, Marine secured a

2

loan from Huntington for $5,000,000.00. In a document signed and notarized on December 26, 2003, the Debtor personally guaranteed repayment of the loan. The Debtor also submitted a financial disclosure form. The disclosure form, dated November, 2003, indicates that the debtor had a net worth of $11,052,249.00.

On July 29, 2005, Marine obtained a second loan from Huntington for $640,000.00. In a document signed and notarized on July 29, 2005, The Debtor personally guaranteed repayment of the loan. The Debtor submitted a financial disclosure form. The disclosure form, dated January, 2005, indicates that the debtor had a net worth of $5,737,000.

Marine defaulted on both loans. According to Huntington, as of May 23, 2008, the balance due on the first note was $4,041,763.84, and the balance due on the second loan was $601,332.04.

*2. Debtor's Divorce Proceedings*

Before the Debtor filed for bankruptcy, he and his wife, Hillary Nunnari (Nunnari), had divorced and were engaged in an ongoing domestic relations case in the Ottawa County Court of Common Pleas (*Hillary Moore v. John R. Moore, IV, Case #02-DRA-064*). Several third parties, including Huntington, were brought into the Debtor's divorce case as necessary parties. The divorce proceedings lasted for several years, during which time the state court held dozens of hearings

culminating in an eight day trial. After the trial, on January 4, 2006, the state court issued a decision captioned "Findings of Fact & Conclusions of Law; Decision & Orders" (Decision). As part of the Decision, the state court found that the Debtor "engaged in financial misconduct... and that he either misrepresented his assets to Huntington National Bank, or to Plaintiff [Nunnari] and this Court." (Decision, ¶ 375).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), as made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment

> if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving the court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." *Jones v. Union County,* 296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial."

*Hall v. Tollett,* 128 F.3d 418, 422 (6th Cir. 1997). *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). In determining the existence or nonexistence of a material fact, a court will review the evidence in a light most favorable to the nonmoving party. *See Tennessee Department of Mental Health & Mental Retardation v. Paul B.,* 88 F.3d 1466, 1472 (6th Cir. 1996).

## DISCUSSION

The Court will first address Huntington's assertion that the doctrine of issue preclusion bars the Debtor from relitigating the issues examined in the Decision of the state court. The Court will then address Huntington's claims seeking a declaration that the debt owed to it by the Debtor is nondischargeable under 11 U.S.C. §§ 523(a)(2)(B), (a)(4), and (a)(6). As explained more fully below, while the state court's Decision contains extensive findings suggesting that the debt owed to Huntington may well be nondischargeable, this Court believes that the issue preclusive effect of such findings in this proceeding is limited, due primarily to differences between the issues actually litigated and necessarily decided in the divorce case (*e.g.*, Debtor's financial misconduct and general

5

misrepresentation of assets) and the elements needed to determine nondischargeability of the debt owed to Huntington under 11 U.S.C. § 523 (*e.g.*, Debtor's intent to deceive Huntington and Huntington's reasonable reliance).

## I. ISSUE PRECLUSION

As the Sixth Circuit has stated, "the full faith and credit statute, 28 U.S.C. § 1738, requires a federal court to accord a state court judgment the same preclusive effect that the judgment would have in a state court." *Fordu v. Corzin (In re Fordu)*, 201 F.3d 693, 703 (6th Cir. 1999). When determining whether a state court judgment precludes relitigation of an issue federal courts apply the law of the state in which the judgment was rendered. *See Fordu*, 201 F.3d at 703.

Under Ohio law "issue preclusion precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." *Metrohealth Med. Ctr. v. Hoffman-Laroche, Inc.*, 80 Ohio St. 3d 212, 217, 685 N.E.2d 529, 533 (1997) (quoting *Krahn v. Kinney*, 43 Ohio St. 3d 103, 107, 538 N.E.2d 1058,1062 (1989). The Ohio Supreme Court has held that issue preclusion applies

> "when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action."

*State ex rel. Davis v. Pub. Employees Ret. Bd.*, 120 Ohio St. 3d 386, 392, 889 N.E.2d 975, 982 (2008) (quoting *Thompson v. Wing*, 70 Ohio St. 3d 176, 183, 637 N.E.2d 917, 923 (1994)).

Huntington claims that it is entitled to summary judgment on its nondischargeability claims based largely upon the issue preclusive effect of the state court Decision. The Court disagrees for two reasons. First, it is not clear that the state court actually decided that the Debtor misrepresented his assets to Huntington, and second, the issue of whether the Debtor misrepresented his assets to Huntington does not appear to have been necessary to determining the division of assets in the Debtor's divorce case.

### A. Actually Decided

While the state court addressed a wide variety of topics in its two-hundred plus page Decision, its principal concern was the Debtor's divorce. As part of that Decision, the state court examined the Debtor's financial dealings and determined that the Debtor had engaged in "financial misconduct" and "misrepresented his assets." (Decision, ¶ 375). However, the state court Decision is unclear concerning the extent of the Debtor's misrepresentation. At one point in the Decision, the state court says that the Debtor "misrepresented his assets to Huntington National Bank, Plaintiff, and this Court." (Decision, ¶ 138). Later in

7

the Decision, however, the state court is less clear, stating "he [Debtor] has either misrepresented his assets to Huntington National Bank, *or* to Plaintiff [Nunnari] and this Court." (Decision, ¶ 375 (emphasis added)).

The lack of clarity in the Decision makes it impossible for the Court to determine whether the state court actually decided that the Debtor misrepresented his assets to Huntington, or if that court only meant to decide the more general issue of whether the Debtor engaged in financial misconduct.

## B. Necessary Issue

Even if the state court's Decision can be read as finding that the Debtor specifically misrepresented his assets to Huntington, the state court did not need to decide that issue in order to issue its final ruling in the divorce case. The state court examined the Debtor's dealings with Huntington to determine whether the Debtor engaged in financial misconduct and violated the state court's order regarding dissipation of the marital estate. The state court needed to make these determinations in order to appropriately divide the Debtor and Nunnari's assets. However, the state court did not have to decide whether the Debtor specifically misrepresented his assets to Huntington.

In short, while the state court's findings that the Debtor engaged in financial misconduct and misrepresented his assets are entitled to preclusive effect, it is

8

another matter entirely to conclude that those issues are identical to the issues in this adversary proceeding needed to establish the nondischargeability of the debt to Huntington.

## II. EXCEPTIONS TO DISCHARGE UNDER 11 U.S.C. § 523

### A. 11 U.S.C. § 523(a)(2)(B) - False Writing

In Count One Huntington seeks a declaration that its claims are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). Section 523 provides in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
> ....
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> ....
> (B) use of a statement in writing –
> (I) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive....

Significant questions remain concerning Huntington's reasonable and actual reliance on the Debtor's financial disclosure forms, and whether the Debtor intended to deceive Huntington.

### 1. § 523(a)(2)(B)(iii) - Reasonable Reliance

9

Section 523(a)(2)(B) requires that the creditor show reasonable reliance, a higher standard than justifiable reliance, which is required for § 523(a)(2)(A). *See generally Field v. Mans (In re Mans),* 516 U.S. 59, 74 (1995) (adopting "justifiable reliance" as an element under subsection (a)(2)(A) as distinguished from the "reasonable reliance" element under subsection (a)(2)(B)); *see also Midwest Cmty. Fed. Credit Union v. Sharp (In re Sharp)*, 357 B.R. 760, 766 (Bankr. N.D. Ohio 2007). The Sixth Circuit Bankruptcy Appellate Panel found that reasonable reliance contains two elements: "(1) did the creditor rely on the materially false financial statement of the debtor; and (2) was that reliance reasonable?" *National City Bank v. Plechaty (In re Plechaty)*, 213 B.R. 119, 126 (B.A.P 6th Cir. 1997). The Sixth Circuit has stated that when determining whether a creditor's reliance was reasonable a court must "consider all facts and circumstances of the case, including the size of the loan." *Martin, et al. v. Bank of Germantown (In re Martin)*, 761 F.2d 1163,1166-67 (6th Cir. 1985). Factors that courts have considered include:

> (1) whether the creditor followed its established lending procedure in approving the loan; (2) whether the creditor used outside sources to verify the financial information provided by the debtor, such as obtaining a credit report; (3) whether the creditor had a previous relationship with the debtor; and (4) whether the writing contained any 'red flags' that would have alerted the creditor of potential inaccuracies in the financial information provided.

*Sharp*, 357 B.R. at 766; *see also First Nat. Bank of Centerville v. Sansom*

*(In re Sansom)*, 224 B.R. 49, 55 (Bankr. M.D. Tenn 1998).  While a creditor is not required to conduct an independent investigation of the debtor's financial statement, at least one court has found that a creditor who grants credit at the same time as the debtor makes the financial statement will not be found to have relied upon the statement.  *See Sansom*, 224 B.R. at 56.  However, "Once it has been established that a debtor has furnished a lender a materially false financial statement, the reasonableness requirement of § 523(a)(2)(B) 'cannot be said to be a rigorous requirement, but rather is directed at creditors acting in bad faith.' " *Bank One v. Woolum (In re Woolum)*, 979 F.2d 71, 76 (6th Cir. 1992) (quoting *Martin,* 761 F.2d at 1166-67).

The reasonableness of Huntington's reliance on the Debtor's financial disclosure forms remains unclear.  The loans that Huntington made to Marine were both substantial, the first was for $5,000,000.00, the second was for $640,000.00.  The Court is unaware of any independent inquiries made by Huntington about the Debtor's finances or credit worthiness.  Additionally, Huntington has not provided the Court with information on its standard lending policies for loans of this size, nor has the Court been made aware of any prior relationship that Huntington might have had with the Debtor.  The only evidence that Huntington has provided are the financial disclosure forms, the loan documents, and an affidavit which, in pertinent

11

parts, merely states that Huntington relied on the financial statements made by the Debtor. Without additional information, the Court cannot determine whether Huntington's reliance on the financial disclosure forms was reasonable.

### 2. § 523(a)(2)(B)(iv) - Intent

A creditor must demonstrate by a preponderance of the evidence that the debtor intended to deceive the creditor. *See Sharp*, 357 B.R. at 765. The Sixth Circuit has found that, "section 523(a)(2)(B)(iv) is met if a debtor is reckless when submitting financial statements that he knows are not true, not only if the debtor possesses a subjective intent to deceive." *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 90 (6th Cir. 1993). Courts have recognized that a debtor will rarely admit to acting with such intent; consequently, a creditor can demonstrate the requisite level of intent through circumstantial evidence. *See Clyde-Findlay Area Cr. Union v. Burwell (In re Burwell)*, 276 B.R. 851, 854 (Bankr. N.D. Ohio 2002).

Huntington has not demonstrated that the Debtor filled out the financial disclosure forms with the intent to deceive. As stated above, the state court's findings do not have issue preclusive effect on the issue of whether the debtor intended to deceive Huntington. Without the state court findings, the remaining evidence submitted by Huntington is not enough to show that the Debtor sought to deceive Huntington when he filled out the disclosure forms. Construing the facts

in a light most favorable to the nonmoving party the Court cannot say there is not a genuine issue of material fact. Huntington's motion for summary judgment on Count One is denied.

B. 11 U.S.C. § 523(a)(4) - Embezzlement and Larceny

In Count Two Huntington seeks a declaration that its claims are nondischargeable pursuant to 11 U.S.C. § 523(a)(4). Section 523 provides in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
> ....
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

Under this section a creditor can seek a denial of discharge of a debt where: (1) the debtor committed fraud or defalcation while acting in a fiduciary capacity; or (2) where the debtor engaged in embezzlement or larceny. The second of these does not require the plaintiff to demonstrate the existence of a fiduciary relationship. *See Peavey Electronics Corp. v. Sinchak (In re Sinchak)*, 109 B.R. 273, 276 (Bankr. ND Ohio 1990).

Huntington does not allege that a fiduciary relationship existed. Rather, its claim against the Debtor is premised on the embezzlement and larceny parts of § 523(a)(4). More specifically, Huntington asserts in its summary judgment

13

motion that the debtor committed larceny by utilizing a portion of the loan proceeds provided to Marine for his own personal use.

The embezzlement and larceny components of § 523(a)(4) are defined by federal law. *See Graffice v. Grim (In re Grim)*, 293 B.R. 156, 165-66 (Bankr. N.D. Ohio 2003). Embezzlement under § 523(a)(4) is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996). The Sixth Circuit has found that, "a creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Brady*, 101 F.3d at 1173. "Larceny for purposes of § 523(a)(4) is defined as the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *Grim,* 293 B.R. at 166 n.3. The original taking of the property must have been unlawful. *See Schreibman v. Zanetti-Gierke (In re Zanetti-Gierke)*, 212 B.R. 375, 381 (Bankr. D. Kan. 1997).

Huntington has not shown that the Debtor wrongfully took or carried away property that belonged to Huntington or was otherwise the subject of a security

agreement with Huntington. Construing the facts in a light most favorable to the nonmoving party the Court cannot say there is not a genuine issue of material fact. Huntington's motion for summary judgment on Count Two is denied.

### C. 11 U.S.C. § 523(a)(6) - Willful and Malicious Injury

In Count Three Huntington seeks a declaration that its claims are nondischargeable pursuant to 11 U.S.C. § 523(a)(6). Section 523 provides in pertinent part:

> (a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
> ....
>    (6) for willful and malicious injury by the debtor to another entity or to the property of another.

The Sixth Circuit has held that to prevail under § 523(a)(6) the plaintiff must prove by a preponderance of the evidence that the debtor acted willfully and maliciously. *See Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999). The Supreme Court stated that the injury must be deliberate or intentional, and "not merely a deliberate or intentional *act* that leads to injury." *Kawaauhua v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in the original).

The evidence provided by Huntington fails to meet this standard. The Debtor filled out financial disclosure forms and personally guaranteed the loans made by Huntington to Marine. However, Huntington has not demonstrated that

15

the Debtor deliberately or intentionally sought to injure Huntington.  Construing the facts in a light most favorable to the nonmoving party the Court cannot say there is not a genuine issue of material fact.  Huntington's motion for summary judgment on Count Three is denied.

## CONCLUSION

For the reasons stated above, Huntington's motion for summary judgment is denied.

IT IS SO ORDERED.